## SUPREME COURT.

·THE PEOPLE *ex rel.,* JAMES F. JOHNSON, *et al.,* agt.
RUSSEL MARTIN.

After the term of office of a supervisor has expired, and another person has suc-
ceeded to the office, a writ of *mandamus* will not lie to compel the former to meet
and account with the justices and town clerk of the town, under the provisions of
the Revised Statutes (1 *R. S.,* 349, § 4).

The remedy of the town is by action upon the supervisor's bond—or by action in
the supreme court in the name of the town, under chap. 534, laws of 1866, to com-
pel them to account, and for the recovery of any money or property of the
town which he has not duly accounted for.

*Mandamus,* does not lie when other legal remedies afford adequate redress.

*Cattaraugus Special Term, February,* 1872.

DEMURRER by plaintiffs to defendant's return to alternative
*mandamus.*

The defendant was elected supervisor of the town of
Olean, Cattaraugus county, in February, 1869, for one.
year, qualified and acted as such until the annual town
meeting in February, 1870. During his term he received
money and property belonging to the town, but has failed
to account for the same or to disburse such moneys, and the
same or a portion thereof remain in his hands. He neglected
and refused to account with the justices of the peace and
the town clerk, on the Tuesday next preceding the an-
nual town meeting in 1870, as required by the statute. An
alternative writ of *mandamus* reciting such opinion was ob-
tained by the justices and town clerk, in May, 1871, requir-
ing the defendant to meet and account with them on the
20th day of May, in that year, or to show cause, &c.

To this writ the defendant has made return, not denying
any allegation of the writ, but admitting his election as

therein stated. He alleges, that in February, 1870, another person was elected, qualified and acted as supervisor of his town, and that he defendant gave the official bond with approved sureties as required by statute—and that since the expiration of his term he has not been elected, nor acted as supervisor. The return further states, that in February, 1870, the board of town auditors consisted of two or more justices of the peace, and one Stowell, town clerk—that in February, 1870, Stowell was succeeded by one Johnson as town clerk, who again was succeeded in February, 1871, by one Smith, whereupon defendant submits that the writ and proceedings should be dismissed.

To this return plaintiffs demur on the ground that it constitutes no defense.

The supervisor's duties declared by statute are as follows:

He shall keep a just and true account of the receipt and expenditure of all moneys which shall come into his hands by virtue of his office, in a book provided for that purpose, at the expense of the town, and to be delivered to his successor in office (1 *Rev. Stat.* 349, § 3).

On the Tuesday preceding the annual town meeting he shall account with the justices of the peace and town clerk of the town, for the disbursement of all moneys received by him (*Id.* § 4).

At every such accounting the justices and town clerk shall enter a certificate in the supervisor's book of accounts showing the state of his accounts at the date of the certificate (*Id.* § 5).

The justices of the town or a majority of them and the town clerk, shall on the Tuesday preceding the annual town meeting, in each year, examine and audit the accounts of the supervisor for moneys received and disbursed by him. The accounts, so audited, shall be filed in the office of the town clerk, as above provided (*Id.*, 355, § 49).

The amendment of 1866, to the above section 5, is given in the opinion.

J. B. FINCH, *for plaintiffs.*
D. H. BOLLES, *for defendant.*

LAMONT, J.—The plaintiff's counsel relies upon the act of 1866, (*chap.* 534), as furnishing authority for this proceeding by *mandamus,* to compel the defendant to meet and account with the justices of the peace and town clerk of Olean, for the disbursement of moneys received by him as supervisor. This is the specific duty which the alternative writ commands the defendant to do, or to show cause to the contrary.

It was the duty of the defendant to have had an accounting with these officers on the Tuesday preceding the annual town meeting held in February, 1870. Such is the command of the statute, for a wilful neglect to perform which, the defendant would be liable to indictment for a misdemeanor (2 *Rev. Stat.* 696, § 38).

Such accounting consists, not in paying over any money or delivering any property, to the auditing board, or to other officers, for the supervisor's term at that time is not ended ; but he is to show the condition of the town funds and property in his hands, the disbursement of moneys received, and the state of his official accounts.

The board of audit place in the supervisor's book a certificate showing the state of the accounts at that time. The audited accounts are to be filed with the town clerk, for the inspection of any of the inhabitants of the town, and to be read at the town meeting, if required on that occasion (1 *R. S.*, 355, § 48, 49).

No doubt, that duty of the supervisor may be enforced by *mandamus,* while he still continues in office, unless some other adequate remedy has been provided by the law for such delinquency. The writ of *mandamus* was originally devised, and is still resorted to, to supply a remedy in cases of this sort—where the law proves otherwise defective, and inefficient, and this is especially the case where public officers neglect to perform a clearly defined public duty.

It is also a general, if not universal rule, that the writ of *mandamus* does not lie where other adequate legal remedies exist *(People* agt. *Supervisors of Chenango,* 11 *N. Y.,* 573).

The office of the defendant as supervisor expired in February, 1870. This writ was not issued until May, 1871. The defendant has now (March, 1872) been out of office above two years.

The peremptory writ, when allowed, must follow the command of the alternative one—and in the present case, that command is that the defendant meet the justices and town clerk, and account with them on the 20th day of May, 1871, a time already past. Of course, this is impossible. The court, however, might, and would if necessary, allow an amendment in this respect, in both writs *(Code* § 471).

The justices and town clerk form a special board of audit, to examine the supervisor's accounts, and the statute has fixed the day of their meeting for this purpose, on Tuesday next preceding the annual town meeting (1 *R. S.,* 349, § 4).

In the *People* agt. *Auditors of Westford,* (53 *Barb.,* 555), the court was of opinion, that the board of town auditors could not lawfully meet and perform the duties of such board on any other than the statute day. Not being authorized like boards of supervisors to hold special meetings.

If, then, a *mandamus* could be awarded in this case, the accounting by the defendant, could not be had before this board, until February, 1873, and then the defendant by virtue of his writs could be required only to show how his accounts as supervisor stood in February, 1870, without paying over a penny to anybody. This, under the circumstances, would seem to be but a very defective remedy.

Now, the act of 1866, supplies to the town of Olean, a complete and effectual remedy, embracing not only all that could be obtained by *mandamus,* but a recovery of any money or property of the town which the defaulting supervisor has not duly accounted for *(Laws of 1866, chap,* 534).

The act gives to the town in its corporate name, the character of plaintiff, in an action in the supreme court, to be instituted and conducted by the same officers who can force the board to audit the supervisor's accounts. In such action, these officers in the name of the town, may compel the defendant to render the very account in question, and, moreover, may, at the same time obtain judgment for the money and property coming to the supervisor's hands, for which he has failed to account.

Whatever, therefore, might have been the propriety of a *mandamus* in this case, independently of the act of 1866, certain it is, that by this statute, a completer and better remedy has been given to the town, than could be reached by a *mandamus*—and if so, then clearly the resort to a *mandamus* should be denied.

It is claimed, however, by the plaintiff's counsel, that the writ of *mandamus* is one of the remedies given by the statute of 1866. It is not given by name, and, I think, it is excluded by the very terms of the statute—the act reads as follows: "If any supervisor shall neglect to account or shall render a false account, or shall convert to his own use any money or securities which may come to his hands by virtue of his office, proceedings may be commenced against him, in the name of the town of which he is supervisor, in the supreme court, by action or otherwise, by the justices of the peace and town clerk of said town, to compel him to render such account or to recover any money or property of the town which he has not duly accounted for."

It is clear, that under this statute, whatever action or proceeding is instituted must be in the name of the town. This language cannot embrace the writ of *mandamus* which must, in all cases run in the name of the people.

Mandamus is a writ issuing in the *name of the sovereign*. (*Bouvier's Law Dic., word Mandamus.*) It is a command issuing in the *king's name, &c.* (3 *Black*, 110.)

In a recent case in the Court of Appeals it is said: Inas-

much as the people themselves are the plaintiffs in a proceeding by mandamus, it is not of vital importance who the relator should be so long as he does not officiously interfere in a matter with which he has no concern.    The office which a relator peforms is usually the 'initiating a proceeding *in the name of the people* and for the general benefit, &c., &c. *(People* agt. *Halsey,* 37 *N. Y.,* 348.)

I conclude, therefore, that a mandamus, if otherwise appropriate, is not authorized by the law in question.    But if the language of this act has been comprehensive enough to include such a proceeding, it would still be denied in the present instance, because of the better and fuller remedy given by other legal proceedings, according to the established rule that the writ of mandamus shall not be allowed when a complete remedy is given by action.

Mandamus lies only when other adequate legal remedies fail *(Fish* agt. *Weatherwax,* 2 *Johns. Cas.,* 217–1 *and* § 3 *of the elaborate note to that case,)* and not always then.    In the array of judicial powers the writ of mandamus is regarded as an auxiliary, to be called into action when the regular forces prove unequal to the emergency, and supplements some defects in the administration of justice.    Again, the official bond of the supervisor, with sureties, will in most if not all cases afford the town sufficient means of indemnity against a delinquent officer.    The bond is conditioned for the faithful discharge of the official duties of the supervisor, and well and truly to keep and pay over and account for all moneys belonging to his town and coming into his hands as supervisor.    *(Laws of* 1866, *chap.* 534, § 2.)    This seems to cover the entire field of official duty.    The first clause of the condition makes the supervisor amenable for misappropriation, or embezzlement, or falsely accounting, or failing to account, or for refusing to pay over moneys as required by law.    *(Alleghany Co.* agt. *Van Campen,* 3 *Wend.,* 48.)

As to the matters stated in the return, it is not perceived how a change in the town clerkship could aid the defend-

ant. The justices and town clerk, who ever they may hap
pen to be, constitute the proper auditing board to examine
supervisors' accounts. I think, also, that a careful consider-
ation of the question would be called for, if a decision on the
point was necessary in this case, before conceding that the
expiration of the defendant's term of office would shield him
against a render of his account as he ought to have done be-
fore his term expired. It has been held that a mandamus
lies to compel a town clerk to deliver the records to his suc-
cessor; to a removed clerk of a county court to deliver up
the records and seal of the court; to compel overseers to
deliver up parish books to their successors; to compel a re-
moved clerk to deliver up books of a public corporate com-
pany; to overseers and guardians to pass their accounts.
(*See note to Fish agt. Weatherwax, supra, citing the cases.*)

This proceeding to compel delivery of records, books and
papers to an officer's successors would fail in this State,
for the reason that our statute has given a more sum-
mary remedy which applies to supervisors (1 *Rev. St.*, 358,
§ 5–9), but the cases show that ex-officers may be compelled
by mandamus to perform some duties pertaining to their office
after the expiration of their official term. It is not neces-
sary in the present case to determine whether the return
is sufficient, for on this demurrer the defendant may go back
of his return and attack the alternative writ. If that is
bad in substance the plaintiffs must fail. (*People agt. Su-
pervisors of Fulton*, 14 *Barb.*, 52 ; *People agt. Baker*, 35
*Barb.*, 105 ; *People agt. Ransom*, 2 *Coms.*, 490.) The writ
is substantially defective when better remedies are given by
action. The peremptory writ must be denied for the reasons
stated, and the alternative writ dismissed. As costs in this
case are in the discretion of the court, I think none should be
allowed.